# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-1017V
Filed: March 10, 2022
PUBLISHED

| | |
|---|---|
| STACY RATZLAFF,<br><br>　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　Respondent. | Special Master Horner<br><br>Findings of Fact; Onset; Tetanus Diphtheria acellular Pertussis (Tdap) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*
*Rachelle Bishop, U.S. Department of Justice, Washington, DC, for Respondent.*

## **FINDING OF FACT**[1]

On July 16, 2018, Stacy Ratzlaff filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA"), resulting from adverse effects of a Tetanus-Diphtheria-Pertussis ("Tdap") vaccination she received on November 15, 2016. Petition at 1. On June 7, 2021, petitioner moved for a finding of fact that onset of her shoulder pain occurred within 48 hours of her vaccination as required by the Vaccine Injury Table. (ECF No. 52.) Respondent requests a finding that petitioner has not established that onset of her condition occurred within 48 hours of vaccination. (ECF No. 54.) For the

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

reasons discussed below, I find that there is preponderant evidence that petitioner's left shoulder pain began within 48 hours of the administration of her November 15, 2016 Tdap vaccination.

## I.     Procedural History

As noted above this case was initially filed on July 16, 2018.  It was assigned to the Special Processing Unit.  (ECF Nos. 1, 5.)  Petitioner filed her Statement of Completion on October 1, 2018. (ECF No. 14.)  Respondent filed a Rule 4(c) Report recommending against compensation on August 21, 2019. (ECF No. 24.)  Respondent raised, *inter alia*, the question of whether onset of petitioner's shoulder pain occurred within 48 hours of her vaccination as alleged. (*Id*.)  The case was subsequently reassigned to me on May 1, 2020. (ECF No. 36.)  On April 28, 2021, the parties confirmed that this case is ripe for a finding of fact as to the onset of petitioner's shoulder pain. (Scheduling Order (Non-PDF), 4/28/2021.)  Petitioner filed the instant motion on June 7, 2021, respondent filed his response on July 16, 2021, and petitioner filed a reply on August 2, 2021. (ECF Nos.53-55.)  This motion is now ripe for resolution. [3]

## II.    Factual History

### a.  Medical Records

Petitioner received her Tdap vaccination in her left shoulder on November 15, 2016, during a well woman exam with her gynecologist, Emily Webb, M.D. (Ex. 1, p. 1; Ex. 13, p. 4.)  Prior to the vaccination at issue in this case, petitioner had remote history of prior left shoulder pain; however, by the time of her most recent pre-vaccination primary care appointment she reported no left shoulder complaints. (*E.g*. Ex. 14, p. 29; Ex. 4, pp. 16-19.)

On November 23, 2016, eight days post-vaccination, petitioner presented to Advanced Physical Therapy for an evaluation of pain in her left shoulder. (Ex. 2, pp. 48-

---

[3] In her motion, petitioner went beyond the prompting of my April 28, 2021 order by arguing not only in favor of specific a finding of fact regarding onset, but also asserting that she should be found entitled to compensation for her alleged Table injury. (ECF No. 52, pp. 5-6, 9.)  However, she also noted that she was declining to substantively address aspects of her required Table showing that do not deal with the issue of onset. (*Id*. at 9.) Respondent's response argued that petitioner is not entitled to compensation, but substantive discussion was limited to the question of onset. (ECF No. 54.)  Prior to the filing of petitioner's motion, I had confirmed with the parties only that this case was ripe for a finding of fact as to onset.  Special masters "must determine that the record is comprehensive and fully developed before ruling on the record." *Kreizenbeck v. Sec'y of Health & Human Servs.*, 945 F.3d 1362, 1366 (Fed. Cir. 2020) (citing *Simanski v. Sec'y of Health & Human Servs.*, 671 F.3d 1368, 1385 (Fed. Cir. 2012); *Jay v. Sec'y of Health & Human Servs.*, 998 F.2d 979, 983 (Fed. Cir. 1993.)); *see also* Vaccine Rule 8(d); Vaccine Rule 3(b)(2).  Moreover, the parties must have a full and fair opportunity to present their case and develop a record sufficient for review.  *Id*.  Accordingly, I decline to reach the question of petitioner's ultimate entitlement to compensation at this time even though the onset of petitioner's condition appears to be the primary, if not sole, issue being litigated by the parties.

49.)  Petitioner's history was recorded as "shot to arm 3 days ago has become severe. Now pain continues to increase each day and is spreading all around." (*Id*. at 48.)  The physical therapist also confirmed reduced range of motion in flexion and internal and external rotation. (*Id*.)  Under assessment, the physical therapist indicated that petitioner "appears to have irratation [*sic*] to soft tissue from injection[.] Appears to have irratation [*sic*] in [joint] due to limited movement[,] popping[,] and high level of pain all the time."[4] (*Id*. at 49.)

Petitioner first sought care for her shoulder pain from her primary care physician, Robert Roeser, D.O., on December 14, 2016. (Ex. 4, pp. 11-14.)  Dr. Roeser recorded that petitioner "presents for left shoulder pain. She received a TDaP shot on 11/15/2016 at Dr. Webb's office, and it was injected into her joint. She has been to physical therapy 3 times a week for the last 3 weeks. She is here for a shoulder injection to help with the inflammation." (*Id*. at 11.)  Dr. Roeser observed on physical exam "normal except left shoulder(s) tender glenohumeral joint decreased range of motion." (*Id*. at 13.)  His assessment was "pain in the left shoulder" and "bursitis of the left shoulder." (*Id*.)  He offered a shoulder joint injection of Marcaine/kenalog." (*Id*. at 14.)

Petitioner was discharged from physical therapy on December 20, 2016. (Ex. 2, pp. 53-54.)  After that, she did not return for further treatment of her shoulder injury until November 17, 2017. (Ex. 3, pp. 5-8.)  In the interim, she had follow up appointments for her Crohn's disease and migraines on March 2, 2017, and June 15, 2017, at which her shoulder pain was not mentioned. (Ex. 4, pp. 3-10.)   She established care with a new primary care physician, Dr. Brooke Dunlavy, on June 26, 2017. (Ex. 3, pp. 9-12.)  Shoulder pain was not discussed and physical examination indicated normal movement in all joints. (*Id*. at 11.)  Petitioner also had appointments with specialists, gastroenterology on August 8, 2017, and endocrinology on August 24, 2017. (Ex. 3, pp. 16-19, 24-28.)

When petitioner returned to Dr. Dunlavy on November 17, 2017, for her annual well woman exam, she raised the issue of her left shoulder pain. (Ex. 3, pp. 5-8.)  Petitioner's history was recorded in relevant part as "[patient] is concerned about L[eft] shoulder pain that has been present for a year. [Patient] states that she had a Tdap shot in her L[eft] shoulder that was given too high, ever since she has had pain in her L[eft] shoulder." (*Id*. at 5.)  Physical examination showed "[d]ecreased abduction/adduction both with active and passive motion in [left upper extremity" as well as "drop arm" and "pain with opposed internal rotation." (*Id*. at 8.)  X-rays were negative for any abnormality. (*Id*. at 33.)  However, Dr. Dunlavy suspected a rotator cuff etiology and referred petitioner to an orthopedist. (*Id*. at 8.)

---

[4] The physical therapist recommended physical therapy two to three times per week for six weeks. (Ex. 2, p. 49.)  Petitioner returned to physical therapy on November 28, November 30, December 2, December 5, December 9, December 12, and December 20, 2016. (*Id*. at 51-72.)  However, the initial onset of petitioner's shoulder pain was not revisited with the physical therapist.

Petitioner saw orthopedist Ryan Livermore, M.D., on December 5, 2017. (Ex. 5, pp. 105-09.)  Dr. Livermore recorded a "13 month history of left shoulder pain following a Tdap booster injection." (*Id*. at 105.)  He explained that petitioner "noted typical injection soreness the first day, but this worsened and continued." (*Id*.)  Dr. Livermore recorded the date of injury as November 15, 2016, and concluded that the "[h]istory and exam are certainly concerning for iatrogenic[5] subacromial bursitis secondary to a wayward injection . . ." (*Id*. at 105, 109.)

Petitioner subsequently underwent shoulder surgery on December 29, 2017. (Ex. 6, pp. 1-2.)  Petitioner then returned to physical therapy beginning January 2, 2018. (Ex. 2, p. 73.)  The history provided at that time indicated petitioner "had onset of pain in left shoulder approx. 1 year ago after receiving a Tdap booster shot into the left shoulder . . ." (*Id*.)

This is not a complete summary of petitioner's medical history relative to her left shoulder injury; however, upon my review of the entire record the remaining medical records are far less probative regarding the onset of her condition and need not be specifically addressed.

### b. Witness Statements

#### i. Petitioner

Petitioner filed an affidavit signed July 31, 2018, declaring in relevant part under penalty of perjury:

> On November 15, 2016, I went in for my yearly checkup at my gynecologist, Dr. Webb.  At the end of my visit, she suggested I receive my TDAP booster.  The nurse came in and gave it to me.  I noticed she was injecting it really high up on my shoulder compared to other shots I had received, but I figured she knew what she was doing.  The shot was painful, but I thought pain from an injection was probably normal and would likely go away on its own.  By the next day, my shoulder was extremely painful and difficult to move.  The pain continued so I saw a physical therapist on November 23, 2016.  He was able to see where I had been given the shot and commented that it had been given way too high.

(Ex. 11, p. 1.)

#### ii. Trevor Ratzlaff

Petitioner submitted a "To Whom it May Concern" letter by her husband, Trevor Ratzlaff, discussing her shoulder pain. (Ex. 23.)  Mr. Ratzlaff indicates that he recalls petitioner's shoulder pain beginning "the night of the injection" and that she still has pain

---

[5] Iatrogenic "[d]enot[es] [a] response to medical or surgical treatment, usually denot[ing] unfavorable responses." Stedman's Medical Dictionary, 28th Ed. (2006), p. 942

4

more than three years later. (*Id*. at 1.)  He indicates that petitioner was frustrated when she returned from her appointment because she had initially been reluctant to receive the Tdap vaccination. (*Id*.)  Mr. Ratzlaff recalls that petitioner initially believed that the pain she was experiencing was normal post-vaccination arm soreness, but that she began calling friends and family that night to ask whether they felt her pain was normal. (Ex. 23, p. 1.)

### iii. Chloe Johnson

Petitioner submitted an undated handwritten letter by her 14-year-old daughter, Chloe Johnson. (Ex. 24.)  Ms. Johnson recalls in relevant part that petitioner complained of "bad" shoulder pain within hours of returning from the medical appointment at which she received the subject vaccination. (*Id*.)  The remainder of Ms. Johnson's affidavit addresses petitioner's subsequent course.

### iv. Jacie Benson

Petitioner submitted a "To Whom it May Concern" letter by her oldest daughter, Jacie Benson, dated May 5, 2020. (Ex. 25.)  Ms. Benson's letter focuses in significant part on expressing anger and frustration regarding the circumstances of petitioner's injury as well as describing reasons why petitioner may have neglected self-care. (*Id*.)  In relevant part, Ms. Benson states that she speaks with her mother daily and that "I remember my mom calling me the evening she got her tdap shot, which was in November 2016, stating her arm was hurting more than normal after getting a shot, and she thought the nurse gave her the shot too close to her shoulder." (*Id*. at 1.)

### v. Kelsey Nelson

Petitioner submitted a "To Whom it May Concern" letter by her daughter, Kelsey Nelson, dated May 4, 2020. (Ex. 26.)  Ms. Nelson echoes several points similar to those expressed by Ms. Benson regarding reasons petitioner's pursuit of healthcare may have been delayed or incomplete. (*Id*.)  With regard to onset she states that "I recall speaking with my mother, Stacy Ratzlaff, the day that she received her shot. The shot was painful, but she did not think too much of it.  Shortly after she left the doctor[']s office she realized the pain she was feeling was not a normal reaction to the shot.  The next morning when I spoke to my mother again, she was in much more pain and was unable to even move her arm." (*Id*.)

### vi. Gary Simon

Petitioner submitted a "To Whom it May Concern" letter by her father, Gary Simon, dated May 3, 2020. (Ex. 27.)  In relevant part he recalls "talking to Stacy the day after she received an injection and her remarking how badly her shoulder hurt and how she thought something might be wrong.  At the time neither of us realized just how badly she was hurt or how much pain lie ahead for her." (*Id*.)

      vii.   Laura Bownds

Petitioner submitted an undated "To Whom it May Concern" letter by her friend and former neighbor, Laura Bownds. (Ex. 28.) With regard to onset of petitioner's shoulder pain, Ms. Bownds recalls that "I noticed a huge change in Stacy beginning in Nov 2016, and during this particular phone call, she was crying and worried on the phone.  She discussed being in excruciating pain due to an injection given that day, and she thought it was given in the wrong area.  Being a nurse myself, I explained where injections in the arm should be given.  Stacy discussed that the injection was given close to her shoulder and she was experiencing awful pain." (*Id*.)

### III.    Party Contentions

In her motion, petitioner argues that both the medical records and "affidavits" support a finding that petitioner experienced shoulder pain within 48 hours of her vaccination. (ECF No. 52, pp. 6-7.)  Petitioner further stresses the importance of affidavits as evidence regarding factual issues and contends that the affidavits in this case alone could support a fact finding in petitioner's favor. (*Id*. at 7-9.)

In his response, respondent counters that neither the medical records nor petitioner's affidavit and accompanying witness statements preponderantly establish onset within 48 hours of vaccination. (ECF No. 54.)  Respondent stresses that petitioner's November 23, 2016 medical record places onset three days earlier, which would be about five days post-vaccination. (*Id*. at 2-3 (citing Ex. 2, p. 48).)  He further stresses that the later December 5, 2017 medical record indicates petitioner experienced only typical post-vaccination soreness before later experiencing worsened pain. (*Id*. at 3 (citing Ex. 5, p. 105).)  Respondent also contends that the witness statements contradict petitioner's affidavit.  Whereas petitioner indicated she initially thought her pain was normal and would subside, the witness statements indicate the pain was severe immediately and was immediately suspicious of an injury. (*Id*. at 3-4.)

Respondent summarizes his argument as follows:

> Judging the record as a whole, a clear pattern emerges. As we move farther in time away from the vaccination, petitioner recalls a closer temporal relationship between the vaccination and the onset of her symptoms.  This type of misinformation effect is a common and understandable cognitive bias, but also underscores the importance of relying on contemporaneous records in making factual determinations.

(*Id*. at 4.)

In reply, petitioner stresses that her treating physicians repeatedly attributed her condition to her vaccination and none raised any alternative cause of the injury or date of onset. (ECF No. 55, p. 2.)  Petitioner contends that it is respondent rather than petitioner that gives too little weight to the contemporaneous medical records. (*Id*.)

6

Petitioner contends that the medical records alone also favor a finding of onset of shoulder pain occurring within 48 hours of vaccination. (*Id*. at 3.)

Petitioner also contends that the witness statements in this case constitute "relevant and reliable" evidence regardless of whether they are sworn statements. (ECF No. 55, p. 3.) Citing Vaccine Rule 8(b)(1), petitioner stresses that special masters are not bound by common law or statutory rules of evidence. (*Id.*) Petitioner argues the inconsistency among witness statements urged by respondent is not persuasive because all the statements place onset of shoulder pain within 48 hours of vaccination. (*Id*. at 3-4.)

### IV.     Legal Standard

Pursuant to Vaccine Act § 13(a)(1)(A), a petitioner must prove the facts underlying their claim by a preponderance of the evidence. A special master must consider the record as a whole, but is not bound by any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. § 13(b)(1).

The Federal Circuit has held that contemporaneous medical records are ordinarily to be given significant weight due to the fact that "the records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). Thus, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *19 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule is not absolute. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Id.* (quoting *Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam,* 968 F.2d 1226 (Fed. Cir. 1992)).

When witness testimony is offered to overcome the presumption of accuracy afforded to contemporaneous medical records, such testimony must be "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). Further, the Special Master must consider the credibility of the individual offering the testimony. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993). In determining whether to afford greater weight to contemporaneous medical records or other evidence, such as testimony, there must be evidence that this decision was the result of a rational determination. *Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 416-17 (Fed. Cir. 1993). The special master is obligated to consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the

record." *La Londe v. Sec'y Health & Human Servs.*, 110 Fed. Cl. 184, 204 (2013) (citing § 12(d)(3); Vaccine Rule 8), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014); *see also Burns*, 3 F.3d at 417.

V.      Analysis

In this case, both parties raise arguments in their motion papers that miss the mark. Nonetheless, when considering the record as a whole, there is preponderant evidence that the onset of petitioner's shoulder pain occurred within 48 hours of her vaccination.

Petitioner is correct that special masters are not bound by traditional rules of evidence. Accordingly, I have considered the witness statements in this case as relevant evidence even though they are unsworn. However, petitioner's further suggestion that they are therefore necessarily also reliable is not persuasive. Even before reaching the substance of the unsworn statements, several factors reduce the weight that can be afforded them. First, the great majority are by witnesses with close familial connections to petitioner. These relationships are not disqualifying, but suggest a need for caution due to the potential for bias. Second, and relatedly, these witnesses have not been sworn and have also not been subjected to cross-examination. Accordingly, these statements are not on equal footing with either sworn statements or contemporaneous medical records. Contrary to petitioner's suggestion that the witness statements alone could support a finding in petitioner's favor, I conclude that if it were the case that this fact finding turned on these unsworn witness statements alone, then a fact hearing would likely have been necessary.

However, respondent's interpretation of the medical records is also lacking. Petitioner's contemporaneous medical records indicate that a mere eight days post-vaccination, she presented to a physical therapist for medical care for shoulder pain that she specifically attributed to the vaccination at issue. (Ex. 2, p. 48.) Respondent stresses first and foremost that this record erroneously states that petitioner's vaccination occurred three days prior (*Id.*) Respondent acknowledges this may be a clerical error, but nonetheless urges that it suggests an onset of pain beginning November 20, 2016. (*Id.*) While this error leaves the record somewhat ambiguous, I disagree with respondent's interpretation. The record misstates the date of vaccination, but still places onset within the specific context of the vaccination. Accordingly, it strongly suggests onset that was understood by the physical therapist to be temporally proximate to vaccination and does not offer any suggestion that onset was anything other than associated with that vaccination.[6]

---

[6] The specific notation at issue reads in full: "Shot to arm 3 days ago has become severe. Now pain continues to increase each day and is spreading all around." (Ex. 2, p. 48.)  Because this record clearly contains an error on its face (*i.e.* petitioner was not vaccinated three days prior), it is not possible to accept it without some form of reinterpretation. There are actually multiple plausible readings that would be consistent with onset within 48 hours of vaccination with only the most modest of corrections. First, there could be a plain numeric error: "Shot to arm [8] days ago has become severe." Second, the lack of punctuation could be the issue: "Shot to arm[,] 3 days ago has become severe." Respondent's interpretation is less modest and less satisfying in that it compounds the error(s) at issue. In respondent's interpretation, this record still misstates the date of vaccination (3 days prior instead of 8 days prior) but

8

Moreover, respondent's preferred interpretation of this initial encounter is less persuasive when considering the medical records as a whole.  Similar to the November 23, 2016 physical therapy encounter, when petitioner sought follow up care from Dr. Roeser about three weeks later, she similarly reported shoulder pain related to her November 15, 2016 Tdap vaccination and specifically associated the pain with the injection itself penetrating the joint. (Ex. 4, p. 11.)  This detracts from respondent's interpretation of the November 23 record.

Additionally, when petitioner later sought orthopedic care for her shoulder pain, the orthopedist concluded that the "[h]istory and exam are certainly concerning for iatrogenic subacromial bursitis secondary to a wayward injection . . ." (Ex. 5, pp. 105, 109.)  Respondent contends that this record should be interpreted as reporting only typical injection site soreness on the day of vaccination (ECF No. 54, p.3); however, this is directly refuted by the orthopedist's explicit notation that injury onset was November 15, 2016 (Ex. 5, p. 105).  While it is certainly true that considerable time elapsed before petitioner sought orthopedic care, there is nothing in the interim medical records that *contradicts* these medical records by suggesting any other period of initial onset.  Accordingly, when considering the medical records as a whole, the evidence preponderates in favor of a finding that onset of petitioner's shoulder pain occurred within 48 hours of her vaccination.

Respondent is correct that there are inconsistencies among the witness statements in this case that are challenging to reconcile.  In her own sworn statement, petitioner states that "[t]he shot was painful, but I thought pain from an injection was probably normal and would likely go away on its own.  By the next day, my shoulder was extremely painful and difficult to move." (Ex. 11, p. 1.)  One of her daughters (Ms. Nelson) similarly stated that petitioner complained of pain the day of the vaccination, but initially "did not think too much of it" and was in much more pain the next day. (Ex. 26.)  In contrast, another daughter (Ms. Benson) specifically recalls petitioner reporting on the date of vaccination that her shoulder was "hurting more than normal" after getting the shot. (Ex. 25, p. 1.)  Her father similarly stated that petitioner suspected something was wrong the day of the vaccination. (Ex. 27.)  Her friend indicated she was in "excruciating pain" and "crying" on the day of the vaccination. (Ex. 28.)  Petitioner stresses that none of the statements place onset outside of a 48-hour timeframe; however, these statements reflect very different assessments of petitioner's symptoms and her state of mind on the day of her vaccination.  Without further examination, it would be difficult to credit all of the witness statements as reliable.  Importantly, however, the medical records in themselves preponderantly establish onset within 48 hours of vaccination.  Moreover, petitioner's own *sworn* affidavit is consistent with the medical records. (*Compare* Ex. 11, p. 1 and Ex. 5, p. 105.)  Accordingly, there is no conflict between the contemporaneous medical record and the sworn testimony.

---

*also* cryptically places onset of pain on November 20 based on the happening of an event (vaccination) that didn't actually occur on that date.

Nor is the fact that petitioner initially thought her shoulder pain was "typical injection soreness the first day" necessarily significant. Although petitioner's subjective complaints are probative as to the severity and timing of her symptoms, she is not herself competent to speak to the medical significance of her complaints. *Accord James-Cornelius on Behalf of E. J. v. Sec'y of Health & Human Servs*., 984 F.3d 1374, 1380 (Fed. Cir. 2021) ("While lay opinions as to causation or medical diagnosis may be properly characterized as mere 'subjective belief' when the witness is not competent to testify on those subjects, the same is not true for sworn testimony as to facts within the witness's personal knowledge. . . .") As noted above, her orthopedist assessed an injury secondary to vaccination occurring on the date of vaccination. (Ex. 5, pp. 105, 109.)

## VI.     Conclusion

In light of all of the above, I find that there is preponderant evidence that petitioner's alleged shoulder pain began within 48 hours of her November 15, 2016 Tdap vaccination.

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master
